First case is Dr. Kenneth Anderson v. Lilla Klasek, and Mr. Saenz, are you ready to proceed, sir? Please do so. Your Honor, let the court know I've got a bit of a sinus, and my head is echoing a bit, so if I'm not talking loud enough, please just ask me if it sounds louder in my head than my wife tells me it is in the room. It's good so far. Good so far, okay, I'll try to maintain this level. Your Honor, we're back on this case, 03L193, again. This is the second time this has been here at Mount Vernon. I'm going to stay on the facts that are presented in the briefs, because what we really have here is involving a sale of a house where certain defects caused by termite damage was not disclosed to the buyers in what we claim is a timely fashion. At the end of the day, what we have is a seller who the trial court said lied about the condition of her house in the disclosure forms. We have a realtor who withheld information about damage to the house from the plaintiffs and the plaintiff's real estate agent until after the plaintiffs had signed all their closing documents. And we have a judge that says none of that matters because the plaintiff's real estate agent should have figured all this out on her own, and because she didn't, the plaintiffs cannot recover any money. Now, in case anybody questions my interpretation of that final facts, I'm going to read from page 1396 of the transcript where the judge is addressing my client at the end of the trial regarding his real estate agent. He said, I quote, I said this before and I'll say it again, you were ill served in this case. It was somebody who practiced in the real estate area for years. It was somebody who was aware of termites and termite problems, yet you moved on just looking at the infestation of termites without exploring the damage that can be caused by termites. Even though the early reports prepared by Terminex indicated damage by termites, no one pursued the damage aspect, end quote. I'm not sure what the judge is talking about the early report because the earliest report in this case was issued in 1998, and there's no indication in this trial or in this case at all that anyone, including Mr. Lynch's client, Jane Butcher, even knew about the 1998 report. That wasn't disclosed until discovery in the litigation, and that report is what was Judge Sports' basis for finding this classic guilty affair to disclose. So I'm not sure what the judge was even talking about there because we had no report to investigate damage on. The problem here is the judge is putting the burden on the plaintiff and the plaintiff's agent to go investigate what she should have known from 14 years experience. 30 years ago, that was the law of the state. It was a caveat, import buyer beware. You go figure it out for yourself because the seller has no duty to tell you anything. Those laws have been changed. This is probably the 10th time I've been to Mount Vernon trying to get decisions from Jackson County to understand the difference between common law misrepresentation and statutory misrepresentation. And this case was backed up here before, and I don't know whether Judge Sports just didn't read this court's prior decision. But on page seven of that decision, this court said, thus, we agree with plaintiffs that this language indicates that a suit filed under this statute. Disclosure statute is a cause of action separate and distinct from one filed under common law fraud. Butcher also argues that the license act is nothing more than a codification of common law fraud. Again, we disagree. This court made it clear then, as the courts throughout the state have over time, that statutory misrepresentation has different elements than common law fraud does. Yet the courts, and specifically in this case, Judge Sports, keeps going back to what people should have known, what they should have figured out on their own, and threw the burden back onto my client's agent. With that said, I want to talk about the decision as it involves Ms. Classic first. The judge found her guilty of failure to disclose. He found her guilty of violating the Residential Real Property Disclosure Act. But even though he found her guilty, he said my client was not entitled to recover any money damages. And he says that largely because he thinks my client's agent should have figured it out. It's important to note here that what we originally sued on was a disclosure on disclosure form, and there's two different ones. There's disclosure number 18 and 19. 18 has to do with infestation of termites. We waived any claims for damages on that because it is clear that my client was aware of infestation. In addition, the termite infestation was eliminated by the time he bought the house. So there's no damages for the infestation. But question 19 asked whether the seller has any knowledge of structural damage caused from prior infestation. And there was massive damage caused from prior infestation, and she said she had no knowledge of it. That's what Judge Swartz says she violated, because she didn't as far back as 1998. Terminix had reported to her, and she signed the report. There was damage, structural damage to this house. So why could he possibly say that we're not entitled to recover from those damages? There's a couple cases that I had cited to the court. It's also in, I think, all of our briefs. It's the Woods v. Pence case and the Hogan v. Adams case. Hogan actually is based upon the Woods case. And what this says is that while it may be liable under the act, if the buyer is aware of the actual damages, then it can be used to reduce their monetary warrant because, in the court's opinion, that is going to be reflected in the sale price of the house. They're going to negotiate the price down to reflect the amount of damages. Well, was that present in this case? Absolutely not. The most telling part of that was on Exhibit 2.4, which was a letter from my client to his realtor, Leslie Pankey, on August 4, 2003. This was after they'd had the home inspection. The home inspector had found evidence of live termites, but no damage. Dr. Anderson listed 12 different items in his letter to his realtor that had concerns. The most serious ones were electrical problems and a roof problem. Estimated that the damages for those 12 items was going to be between $20,000 and $30,000 and reduced his offer by an appropriate amount. As a result, under the Woods v. Pence case, he would not be able to recover for any of those items because the price would have been reflected in the purchase price of the house. However, nowhere in that list of 12 items did you find anything about termite damage. So there's no evidence in this case that he or his agent ever knew there was termite damage to this house. He never asked for a reduction in price because of termite damage. Yet the damage was massive, and the evidence showed it was about $138,000 worth of damage to this house. The closest he got to that was item 2 on his list of 12, and that was his concern for termite infestation, which would have been covered under question number 18 on the Disclosure Form. And he did demand that they remove the termites and get a new certification that the termites were gone, which they did. But nowhere in anything did anybody say that there had been damage caused by prior infestation. Judge Swift says, well, your real estate agent's got 14 years of experience. She should know that if you got termites, you probably got damage. Well, that, first of all, isn't the law. The law in Woods v. Pence and all these cases clearly says the buyer does not have a duty to investigate beyond that Disclosure Form. In addition, the defense put up an expert entomologist from Purdue University who testified that you can have termite infestation in your house for up to two years before it starts actually causing damage. So infestation and damage do not necessarily go hand in hand. Now, obviously, if you've got damage, you've had termites at some point, but the mere presence of them at the time doesn't mean that you've got damage to the house. Which is why there are two separate disclosures on this form. So it is our position that without any evidence whatsoever that Dr. Anderson or his agent had any actual knowledge of termite damage to this house, the trial court improperly reduced the damages in the case. There was no basis under the law for him to do that. But had he been following the common law? Well, that was the problem. But again, we're not dealing with any common law claims in this case. As for Defendant Butcher, the judge dismissed that case entirely on a Section 1110 motion that was proposed in 2007, which I'm sure this court is aware of. The 1110 motion is the equivalent of a direct verdict, but it was used in an offense trial. This was the claim against Butcher. And I'm not even going to address here today the claim for consumer fraud because I'm going to address the Real Estate Licensing Act claim. That requires a seller's agent to disclose all latent material, adverse facts about a property that that agent knows about. We basically got four elements there, whether it's timely, whether the defects are latent, whether the defects are material, and whether the defects are known to the licensee. The question of knowledge to the licensee is really undisputed. All this information was given to Defendant Butcher at least 24 hours prior to closing. She admits that she did not fax it to my client's agent. She admits that she brought it to closing and gave it to my client after he'd signed all the papers. So that question of known to the licensee is really not an issue here. The question of whether or not it was latent was covered by the testimony of Mike Smith, who was the home inspector, who said this damage, he didn't find any damage when he inspected the house. But it's a visual inspection that these home inspectors do. And in order to see this damage, you had to remove insulation, pull it back, put it back. This is something home inspectors don't do, but it is something a termite inspector would do. Terminix also testified you couldn't see this without removing that insulation. So we've got two people testifying, yes, this was latent defects. As for the question of whether or not it was timely and whether or not it was material, I think Judge Swartz pretty well covered that. On page 1261 of the transcript, he states, now, quote, now granted Mr. Sanders' argument that 1.6, 1.7, and 1.4 disclosed information that would be necessary, useful, helpful, important to the purchase in this particular case, but that should have been demanded long before we sit down in a room and start cutting checks so that it can be intelligently reviewed and looked at in some non-hurried state. Was Ms. Butcher responsible for that? No more so than the plaintiffs or the agent of the plaintiffs. Well, he's talked about, he's acknowledging that this would have had to have been done in a very hurried state because if you don't give them the papers until they're signing their documents, how do you have time to review this mountain of stuff that goes along with financing? So I think he answered the question of whether it was timely or not in his statement. When he says that information would be necessary, useful, helpful, important to the purchasers, I think that pretty well covers materiality. So the four elements that are necessary to prove a case under the Leisnig Act, timeliness, latency, materiality, and non-leisnig were there. How the judge could say as a matter of law we didn't have a crime of facial case was beyond me, except that he applied the common law principles of common law fraud. And that was his basis was your real estate agent should have known about this, she should have figured it out, and therefore you don't have a case. That's not what the statute says. Ms. Butcher clearly had knowledge of this. She admits she had this report, which was a second report produced in, I think, August 26, 2003. She had this according to Lila Classic, the other defendant, or her office had it six weeks before Leisnig. Ms. Classic had moved to Nebraska and said she delivered this report to Ms. Butcher's office. Ms. Butcher said, well, somebody must have lost it because I didn't see it. Somehow that got to be my class problem because Ms. Butcher's secretary or somebody misplaced the report. But Ms. Butcher does admit receiving another copy of it 24 hours before Leisnig. She indicates that she didn't understand the report, which was kind of scary if you think about it because the report is titled Inspection Report for Real Estate Transfers. How would an agent of 14 years not know that that's a fairly important document if it's for real estate transfers? Personally, I found it unbelievable. But that's up to the trial court to decide whether or not they can believe that testimony or not. But then she testified that she did notice there was something on there about damage, but she just assumed that because she thought Terminix had to report any damage, even if it was, and I think her term was, little bitty. Well, if you don't understand the report, how do you know whether it's little bitty or not? Shouldn't the safe thing to do be to fax it over to the other office to see if maybe they understand it? As it turns out, this damage wasn't little bitty. Ms. Butcher says on page 1202 of the transcript that this report doesn't say anything about structural defects. I thought she didn't understand the report when, in fact, actually the report does say it's structural. But what she was confusing was the Residential Real Property Disclosure Act that has to do with itself, requires them to disclose known structural damage. The Real Estate Agent Under the Lasting Act is required to disclose all latent material adverse facts. There's nothing in that act that says it's limited to structural damage. But, in fact, that's what we have here is massive structural damage. To be honest, I was totally blown away by the little bitty testimony. They're going to make the call, this is little bitty, so I don't have to disclose it. If it's adverse and it's material to the sale of that house, they have to disclose it. That puts a burden on the realtors, which is completely different from the way the law was 20 years ago. But it makes sense because the people who are most apt to have negative information about a house is the seller and the seller's agent. And the law says if they have that knowledge, they have to disclose it. So we need to shed the old common law concepts of buyer beware and start following the law of the legislature now. And in this case, the judge works through all the statutory stuff out of the window. The problem here was that they did not give these documents over, and there is some dispute, as to exactly when they handed the documents over during disclosure. They admit that my client had signed all their papers in the banker's office. They came out to a table. Their argument was when there was still a P-tax form they had to sign, so therefore their position is they gave it to him right before they signed the P-tax. So if that were to be the law in Illinois, we're going to wait until 30 seconds before the defendants have to sign something and see if you can read all this stuff before we put a scribble on a piece of paper. He and Judge Fortes have a problem with that. He said these are complicated documents. They need to be reviewed in an intelligent manner without being heard. So the testimony in this case clearly showed that they knew about this problem, they knew about it in time to stop it, and they actively concealed this from the plaintiffs and went ahead with closing it. What we're asking this court to do, to be honest with you, this was my biggest fear coming up here. Where are the damages? I think this court probably has jurisdiction to, or the right, to accept the $138,000 testimony that my clients put on the stand. They testified they'd already put about $50,000 into this house, and their experts said there's enough left. I don't remember what the number was, but it totaled up to $138,000. So we're asking you to give us the $138,000 and ask the line of class. With regard to Jane Butcher, I don't know what can be done except possibly send this back with a clear instruction to the court as to what we have to prove and what we don't have to prove because Ms. Butcher never put a defense on it. It was dismissed before they ever did that. So I don't know how to resolve that except sending it back to the judge's courts and allow them to put a defense up. But I think that if you're going to do that, you need to tell him as importantly what I don't have to prove as what we do have to prove. And certainly if the court sends it back at all, we've proven the crime of first offense. But I don't know how the court can do a complete overturning on Butcher without sending it back to further review. Thank you. Mr. Clemmons and Mr. Lynch, who's going to argue first? Great. Please proceed. May it please the court. As indicated, I am John Clemmons. My client in this case was Lila Klassik, one of the appellees. This, of course, was the second trial, and we've alluded to that, I think, in the record. The first trial was a jury trial, and this court reversed that proceeding, sent it back almost solely on the basis that it should not have been a jury trial. And then we took up a bench trial with the Honorable William G. Schwartz presiding. I have many disagreements with the appellants. Let me see if I can wade through these and then answer any questions that the court might have. Initially, I believe the standard of review in this case is whether or not the trial judge's rulings were against the manifest weight of the evidence. I do not think this is a case where we're dealing, as the appellant alludes to in their brief, that we're talking about some construction issue of the Residential Real Property Disclosure Act. In regards to Ms. Klassik, the complaint was one count against her under the Residential Real Property Act. And it essentially alleged problems in two areas. The court, of course, will have all the exhibits, but the report is a real interesting piece of work that is utilized pursuant to that statute. But our focus is on questions 18 and 19. 18, Ms. Klassik answered she was not aware of current infestation of termites or other wood in this house that she was attempting to sell. 19 is that she was not aware of any structural defect caused by previous infestations of termites or other wood-boring insects. The case essentially began in July of 2003. This is an old proceeding. On July 15th, my client, Ms. Klassik, got together with Mr. Lynch's client, the realtor, Jane Butcher. Jane Butcher was retained by Ms. Klassik to help her sell the house, a member of Century 21 Realty. And they met at Ms. Klassik's house, and one of the things they were going to do, as in most real estate transactions, is the paperwork. You get the paperwork all set to get this house listed. And they did so, and during the course of the paperwork, they came up with a price, of course. I think the original asking price was $199,950. And they then got to the residential real property disclosure report, and the two of them began to fill it out. And it just so happened that there were two gentlemen from Terminex who were at the Klassik residence doing some work. Ms. Klassik had a long-time contract with them to treat the house. When the two ladies got to paragraphs 18 and 19, they asked the two Terminex employees how they should answer, and they were told no. This was testified to by Ms. Klassik. It was corroborated to by Ms. Butcher. Three days later, the house is now on the market. That's when the Andersons become involved. July 18, 2003, they make an offer on the house. $192,000, I believe, somewhat below the listing price. Very important in the sales contract, and you will have that in the exhibits, they indicate this contract is contingent on a home inspection, septic inspection, and an inspection for what is referred to as wood-destroying insects, generally termites, but a broader term. To be done by the buyers, the way the real estate sales contract reads, 1.13.1. What the Andersons then do, and now we jump from the 18th to the 26th of July, things move pretty quickly, is they get themselves a home inspector, a gentleman by the name of Mike Smith, a licensed Illinois home inspector. He comes out. He inspects with Dr. Anderson present, with their realtor, the buyer's realtor, Leslie Pankey. I disagree with counsel and the appellants that we believe Mike Smith clearly, in this inspection and in his testimony, and in his report, which is also one of the exhibits, explained to Dr. Anderson and realtor Pankey that he found some live termite infestations and he found some damage. He then kind of begged off to both of them, telling them, you need to get someone in here who's an expert in termites. I'm a general home inspector. You need to follow up on this. Puts it all in writing and sends them a report. And then all of this information gets conveyed. It comes back between the realtors, who then, and we're jumping ahead a little bit in time, she then contacts Terminex, still under contract, to her. And she asks Terminex to come back out to her house and go over it and look for infestation, look for damage. In this process, which we're now into August of 2003, Terminex generates three reports. You will find them referred to as 1.41, 1.6.1, 1.7.1. These are crucial reports. What they tell everyone is that there is damage, and it identifies several locations of damage, but there is no active infestation of termites. Classic then testifies that she takes these reports, delivers them to the Century 21 office for Ms. Butcher, her realtor, so they can be conveyed to the industries. She's not trying to hide anything. And there is testimony from Ms. Butcher that she's not present when Classic drops these off, and she doesn't ever get these reports. She says she never sees something happened at her office. Classic then leaves. We're now in September sometime. She moves to Nebraska, where she presently resides and is retired. Butcher becomes concerned about what's going on with the termites and the termite inspection because Anderson has written three separate letters to his realtor, Leslie Penk. He passed on to Jane Butcher, passed on to the seller, Ms. Classic, where he raises concerns and indicates his awareness of termite problems. He also starts lowering his price as to what he's going to pay and eventually makes a final $185,000 offer. Ms. Classic counters for an extra $1,000. They agree on $186,000, but Ms. Classic says it has to be an as-is deal, an as-is sale. Now as we get closer to closing, which is not until October 27th, Jane Butcher is like, where are all these termite reports? One of the more interesting things in this case, which Judge Schwartz clearly indicated there's nothing like it, factually, is that the Andersons never got an inspection, never hired anybody, never followed up on what their home inspector, Mr. Smith, suggested. It was Classic who went out and got a further inspection, got reports, delivered them to her realtor's office. Now we get to closing because Ms. Butcher gets her hands on all these reports the day before, calls Leslie Penk. Penk says just bring them to closing, which she does. Her testimony, which is way different than the appellants represent, is that she delivers these reports to the Andersons, to Dr. Anderson at the closing. She clearly indicates he's in signing some papers. She thought they were the mortgage papers with his banker, but she gives him the reports. These reports are crucial because they indicate that there are numerous areas of damage. Thank you. Mr. Lynch? Thank you. May it please the court, counsel, on behalf of Jane Butcher, I would first of all make the point, which should be obvious, these are essentially two separate cases with separate issues involved, and I think there are definitely some areas of legal issues that really don't pertain to the case against Jane Butcher. Mr. Sanders in his argument indicated he was focusing on the Real Estate License Act of 2000. That's fine. I think I'll focus mainly on that as well. I want to say there is one particular statement that I heard Mr. Sanders make twice that I strongly disagree with. I think it's very inaccurate. When he makes the statement that Judge Schwartz found there was no prima facie case with respect to Jane Butcher, as to the plaintiffs, that's not what happened, not at all. This was a motion under Section 2-1110 for judgment at the close of plaintiff's evidence. In that statute, the court is permitted, advised to go ahead and weigh the evidence, consider the credibility of witnesses, weigh the evidence, and may enter judgment. The court is satisfied that the plaintiff has not met the burden of persuasion to enter judgment in favor of the defendant. That's what happened here. Judge Schwartz makes specific comments to indicate that he did consider by a preponderance of the evidence and so forth. So the case wasn't dismissed. The case wasn't found, there was not found to be no prima facie case. The court weighed the evidence and found in favor of Jane Butcher. The plaintiff at different points is saying that Jane Butcher should have been required to put on her case. Basically, at this point, the judge had the case against Jane Butcher. I mean, I will say the most that would have occurred would have perhaps been some supplemental testimony and direct from Jane Butcher and then the damages witnesses, and that's it. So this is not a situation where in some way a plaintiff was circumvented from presenting their case against Jane Butcher. If a plaintiff asserts and I think really never establishes the issue in the briefs, asserts that somehow Judge Schwartz misapplied the law with respect to Jane Butcher, I'll get back to that a little bit further here in the minutes that I have, but if plaintiff has not established that somehow Judge Schwartz misapplied the law, and I think that has not occurred, then we're dealing strictly with a manifest way to the evidence argument. And if it's manifest way to the evidence, and I submit that that is what we're talking about, and I submit that that really is the cornerstone of plaintiff's argument against Jane Butcher, then the court well knows that what we have here is a deferential standard of review, that we look at the record as a whole to see if there is evidence supporting the judge's determination. But it's the deferential standard. I do believe that if one manifest way to the evidence is the issue, quite obviously the court in considering that needs to look at the record and the evidence as a whole. We provided, I think, a rather lengthy 16-page statement of facts that I think sets forth basically what happened here. I submit that it sets forth an accurate and fair depiction of the facts with respect to the case against Jane Butcher. Plaintiff, on the other hand, even now, is continuing to argue a very narrow, one-sided version of the evidence, and there are a number of things, I won't try to cover everything, but where I very much disagree with Mr. Sanders' characterization of the evidence, even in oral argument. But I trust that in the brief this is set out for the court's review and in the record as a whole. But basically, in the brief at numerous points, plaintiffs are arguing Jane Butcher's credibility, trying to make the argument that her testimony was not believable. And I have to say that is for the prior fact, for the judge to determine. Much of the issues against her really relates to her state of mind. The allegations are that she intentionally withheld and that she had actual knowledge of the contents of the report. And obviously, her credibility as a witness was assessed by Judge Schwartz, and he accepted her testimony. Even with regard to making an issue about, you know, did Lila Classic drop the paperwork off at the Century 21 office? What I pointed out in the brief in the statement of, well, I set forth what was said in the statement of facts, but Lila Classic's testimony on that point was equivocal, and I set that forth in detail in the brief. But basically, Jane Butcher's testimony was never, you know, somebody in my office must have lost it, never said that. She simply stated that she never received it, that when she received the call from Leslie Pankey about trying to find a clearance letter, she went looking for it, but that that didn't occur until a couple of weeks before the closing. Yes, Judge Schwartz was vocal in his opinions about Leslie Pankey. I will state this. I mean, I believe I don't disagree with any of the opinions he expressed. I don't know that there was anything necessary to the decision about those opinions, but he did express them. What Plaintiff is arguing is that somehow because he expressed these opinions about Leslie Pankey's handling, that is to say Plaintiff's realtor, that he somehow misapplied the law applicable to Jane Butcher, and that is simply not the case. I mean, the judge in ruling, you know, comments specifically that he's weighed the evidence, that he does not believe that Jane Butcher fell short of the requirements of the two statutes, consumer fraud and the Real Estate License Act, and in any event, that he found that that was not proven by a preponderance of the evidence. So he did apply the correct legal standard, and this is manifest way to the evidence. Plaintiff, again, has certainly pleaded that this is a case of actual knowledge, intentional withholding, and basic testimony from Jane Butcher was that she did not receive this report until the day before closing, that she, you know, gave a very detailed explanation of what she saw on the first page of the report, where there was a line where the inspector should have checked for damage but left it blank, and other statements on the first page of the report that say no active termites, nothing further recommended, concluded that she was seeing a report that did not show termite damage, then basically that she, you know, quickly looks at the next two pages and, you know, was not familiar with those forms, did not recognize that when you look very closely at those forms, which you have to do, by the way, that they indicate that there's damage, that she was not aware of that. And that's a question of credibility. It's a question of weighing the evidence, which the judge did. There is an issue that's been raised, and Mr. Sanders made some reference to it here. I think this is Mr. Sanders' issue, but about, you know, I'm going to say that the statutes have completely changed the common law. Without getting into that, but focusing on the Real Estate License Act of 2000. The Real Estate License Act of 2000 calls for actual knowledge. It calls and talks about a reasonably diligent inspection. And here we have, I think that that is certainly what he is saying is that all the statute requires for a reasonably diligent inspection is what a customer can see on a walkthrough. If a customer can see it on a walkthrough, it's not a latent defect. And certainly in this case, without making some large pronouncement about the statute, where you have the purchasers having contracted for a termite inspection, for the right to a termite inspection, where the evidence shows the home inspector specifically advised plaintiffs that they needed a termite inspection, that a reasonably diligent inspection by the customer would have included a termite inspection on their behalf. I see my time is about up. Thank you. Thank you. Rebuttal? Your Honor, I think the question is long settled that any time a court is applying a legal standard, that issue is reviewed to no vote by this court. I would agree that if you didn't violate the legal standard, then they probably are right. But clearly the court in this thing, by using wording throughout this case, the same things like you moved on without exploring the damage that can be caused, and saying you should have demanded this. This is imposing common law standards rather than statutory requirements because the case law and the statute places no duty on that buyer to go beyond those inspection reports. The Residential Real Property Disclosure Act clearly states on the form that the buyer may choose to rely on this report and is under no obligation to take on any further inspections. It should also be noted, and I would disagree with Mr. Lynch, First of all, a home inspector is not entitled to perform a termite damage report. That requires a special license. By the same token, a termite inspector is not authorized to perform a home inspection because we have separate licenses now for home inspectors. So by following their logic, every buyer, any time they live in a house, is going to be required to hire their own termite inspector and their own home inspector. If you do that, it defeats the whole purpose of that section of the licensing act. In addition, Mr. Clemons seemed to be arguing at one point that maybe his client wasn't guilty of violating the disclosure act. That's not before this court. Judge Swartz has already ruled that she violated that act and there was no cross with it. So she's guilty of that. The only question is whether my client is entitled to monetary damages for that violation. I would also take issue, and I would challenge, he didn't bring up where in the record this can be found, that Mike Smith indicated there was termite damage. Mike Smith says in his report that there was evidence of prior damage that had been repaired in the bathroom area. That makes it even worse because it lends a buyer the belief that there was prior damage. It's been fixed. However, Lila Classic on the stand absolutely denied there had ever been any prior damage and that she'd ever had any repairs done to it. She claimed that Mike Smith must have confused her house with another house. So that is the only mention that Mike Smith makes of termite damage and what he did claim said it appeared to have been repaired. But he did find a lot of termite tubes and said you need to get this taken care of, which was done because the termites were inspected. They get an extra treatment and they were removed, which is why we're not asking for damages regarding infestation, just the damages that occurred for prior infestation. Another issue that was brought up was this as-is matter. I know this court brought it up the last time we looked at it. You can accept a house as-is under the law. However, what happens is it's as-is disclosed. If I tell you in a disclosure report that I've got electrical problems and I accept the contract after that as-is, then I've accepted those electrical problems. But if the homeowner says I'm not aware of electrical problems when they are, that's what they told you. You relied on it, and even if you've got an as-is, you can still go back and sue in a minute. So as-is under real estate law now means as-is disclosed, not as-is even existent. If that were the law, there would be no point in having the Residential Real Property Disclosure Act. Everybody would just say it's an as-is contract, and that gets us out of any lies and tip. So the as-is language doesn't apply here because she clearly said she wasn't aware of any prior termite damage when, in fact, the court said she was. So that as-is is meaningless, and I would point the court back especially to 2.4.1, which was the letter from Ken Anderson to his agent that clearly sets forth what the concerns he had that he was aware of, and that was why he was reduced to the price of the house. Nowhere in that two-page letter does it mention termite damage at all. So it clearly was not on his mind because he wasn't aware of it. Had he been aware of it, we wouldn't be here. As a matter of fact, there are no follow-ups. Thank you. I appreciate your arguments in the briefs, and we'll try to get you in order at the earliest possible date. Thank you.